IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED FIRE AND CASUALTY COMPANY,
an Iowa corporation,

       Plaintiff,

       v.                                       Civ. No.12-1130 JCH/CG

JOE D. ROYBAL, d/b/a BMS DRILLING;
RICHARD LANDAVAZO; VIRGINIA
LANDAVAZO,

       Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Richard and Virginia Landavazos'
(hereinafter, "the Landavazos'") *Motion to Dismiss* (Doc. 11). The Court having considered the
Landavazos' motion and joint affidavit, Plaintiff's response brief and exhibits, and the relevant
law, and being otherwise fully informed, finds that the Landavazos' motion is not well-taken and
should be DENIED.

## SYNOPSIS OF THE INSTANT DISPUTE

In the instant declaratory relief action, Plaintiff United Fire and Casualty Company, a
liability insurer, seeks a determination that it does not have a duty to (1) indemnify Defendant
Joe D. Roybal for money damages for which he may be found liable in a separate state court
action brought against Roybal by the Landavazos[1] or (2) bear the costs of defending Roybal in

---

[1] *See Richard and Virginia Landavazo v. Joe D. Roybal d/b/a BMS Drilling*, Case No. D-1329 CV 2012-00966, Thirteenth Judicial District, Sandoval County. In the underlying state court action, the Landavazos claim that Roybal failed to complete drilling a residential well on their property, and seek damages for (1) the amount they already paid to Roybal, (2) damage to their property from Roybal's equipment, (3) the cost to haul water to the property, (4)

the state court suit.  Plaintiff acknowledges that Roybal has an insurance policy with Plaintiff, but contends that it has no indemnity or defense obligations under the terms of the policy in issue.[2]  Plaintiff asserts that this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) and (c)(I), as Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs of suit.  *See* 28 U.S.C. § 1332(a) (diversity jurisdiction requires complete diversity of citizenship between the plaintiff and defendant, and an amount in controversy in excess of $75,000.00).

Currently pending before the Court is the Landavazos' motion to dismiss the instant action for lack of diversity jurisdiction.  In support of their motion, the Landavazos submit a one-page joint affidavit, in which they attest that "[t]he total amount of damages we are seeking in our state court action against [ ] Roybal should not exceed Fifty-Five Thousand and No/100 Dollars ($55,000)."  (Doc. 12 Landavazo Aff. ¶ 4).  This statement provides the sole basis for the instant motion, as the Landavazos do not submit a brief or exhibits supporting dismissal.

Plaintiff responds that dismissal should be denied for two reasons.  First, Plaintiff contends that the Landavazos' state law claim against Roybal could result in a damages award reasonably exceeding $75,000.00, based upon information available concerning the claim.  Further, Plaintiff argues that even if the Landazos were willing to stipulate that they would not accept damages exceeding $55,000.00 from Roybal in the state court action, Plaintiff's potential duty to defend Roybal in that case would result in Plaintiff incurring at least $20,000 in legal

---

maintenance of water tanks and pumps, (5) the cost of hiring another company to complete performance, (6) consequential damages, and (7) attorneys' fees.

[2] Plaintiff is currently representing Roybal in the state court action under a reservation of rights.

2

fees and expenses.

## LEGAL STANDARD

### Motion to Dismiss Under 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted). The party invoking federal jurisdiction generally "bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Pursuant to Fed. R. Civ. P 12(b)(1), a party may raise the defense of the court's lack of subject-matter jurisdiction by motion. *See also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In the Tenth Circuit, a motion to dismiss for lack of subject-matter jurisdiction "generally take[s] one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. *See Ruiz v. McDonnell,* 299 F.3d at 1180; *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

*Braverman v. New Mexico,* 2012 U.S. Dist. LEXIS 155677, at *56 (D.N.M., Sept. 30, 2012)

3

(quotation omitted).

Thus, while a Rule 12(b)(1) motion, unlike a Rule 12(b)(6) motion, can include references to evidence extraneous to the complaint without converting it to a Rule 56 summary judgment motion, a Rule 12(b)(1) motion must be converted to a Rule 56 motion "when resolution of the jurisdictional question is intertwined with the merits of the case."  *Holt v. United States*, 46 F.3d 1000, 1003. *see also Franklin Sav. Corp. v. United States,* 180 F.3d 1124, 1129 (10th Cir. 1999).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim."  *Davis ex rel. Davis v. United States,* 343 F.3d 1282, 1296 (10th Cir. 2003)(quotation omitted); *see also Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 978 (10th Cir. 2002) (jurisdictional question is considered intertwined with the merits of the case when the court's subject matter jurisdiction is conditioned upon the same statute that provides the substantive claim in the case).

## **ANALYSIS**

As set forth above, the Landavazos offer only their affidavit testimony that their potential damages in the state court action against Roybal "should not exceed" $55,000.00 as a basis for Rule 12(b)(1) dismissal.  It is unclear from their affidavit whether the Landavazos' projected figure includes the cost of their attorneys' fees, which they also seek from Roybal.  Further, the Landavazos do not reply to Plaintiff's response brief, which offers several arguments as to how the total cost of defending and indemnifying Roybal in the state court action – and thus the total amount in controversy in this case – will exceed the jurisdictional amount of $75,000.00.  For the reasons set forth below, the Court finds that Plaintiff meets its burden of establishing the

existence of federal diversity jurisdiction. *See Steel Co.*, 523 U.S. 83, 104 (1998).

I.    **The Landavazos' Damages and Attorneys' Fees Alone Could Reasonably Exceed $75,000.00**

The Landavazos' affidavit fails to explain how they arrive at their $55,000.00 total

damages estimate for the underlying state court suit, nor does it clarify whether that figure

includes the attorneys' fees that they also request from Roybal.  The state court complaint is

fairly non-specific, asserting only that the Landavazos are owed $24,204.11 for money they paid

to Roybal for the incomplete well-drilling project, unspecified additional damages for significant

property damage caused by Roybal's crew, foreseeable consequential damages in an "as yet

undetermined amount," and attorneys' fees.  Here, Plaintiff proffers ample evidence that the

Landavazos' total damages could reasonably exceed $75,000.00., even before Plaintiff's costs

incurred in defending Roybal in state court are properly counted toward the jurisdictional

amount in the instant case.

With regard to any remaining damages over the $24,204.11 contract price, the

Landavazos' complaint asserts only that they "have been further damaged in an as yet

undetermined amount" for the damage to their property caused by Roybal's aborted drilling

efforts.  (Doc. 1 Ex. 5 ¶ 12).  In support of its position that the Landavazos' property damages

have the potential to be substantial, Plaintiff proffers a complaint letter from the couple to the

Office of the State Engineer about the dispute, which details significant damage to their property

from Roybal's equipment, including damage to their fence and gate; the destruction of several

trees; a large, solid dirt hill that allegedly took them two weeks to remove; and various mud pits

that were dug for drilling operations and subsequently left open on the property, which nearly

caused injury to two young children.  (Doc. 16 Ex. 5).  Plaintiff notes that the damage to the Landavazos' property was extensive enough to warrant coverage of the dispute in the local media, including by NBC affiliate KOB-TV.  *See* Doc. 16 Ex. C.

Next, the Landavazos claim unspecified damages for the cost of hauling water to their property every week (for a period that had lasted "for the last nine (9) months" and was still ongoing as of the date the state court complaint was filed in May 2012), in the absence of the contracted-for well, as well as $850 in plumbing supplies. (Doc. 1 Ex. 5 ¶¶ 13-14).

Finally, the Landavazos seek reimbursement "for all subsequent and consequential damages in amounts which have not yet been determined," as well as an award of their attorneys' fees and "other and further relief as the Court deems just and proper." *Id.* ¶ 15. While the parties do not proffer any information as to how active the state court case has been, the Court observes that counsel for the Landavzos filed their state court complaint in

Considering all of the various categories of specific relief sought by the Landavazos in addition to their equivocal testimony that their damages "should not" exceed the jurisdictional amount, the Court concludes that their damages and attorneys' fees alone could reasonably exceed $75,000.00.  *See St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal").

## II.    The Amount In Controversy in the Instant Case Also Includes the Cost of Defending Roybal in the State Court Action

Moreover, even if the Landavazos *had* expressed a willingness to stipulate that they would seek no more than $55,000.00 in damages and attorneys' fees from Roybal in the state

court action, which they have not, the Court finds that the instant Complaint still meets the amount in controversy requirement.  The Tenth Circuit has held that both an insurance carrier's potential indemnity obligation <u>and</u> its costs in defending a lawsuit against a policy holder count toward the jurisdictional minimum in determining whether federal jurisdiction exists.  *See Meridian Security Insurance Co. v. Sadowski, et al.*, 441 F.3d 536, 539 (10th Cir. 2006) (vacating district court judgment dismissing insurer's action for declaratory judgment that it need not defend or indemnify policyholder in pending state court action and finding that federal suit was subject to dismissal only if the district court could say for a legal certainty that the amount at risk in state action was less than $75,000, which was not clear at the time the federal suit was filed). Here,  Plaintiff appears to assert in good faith that the cost of defending Roybal in the state action is reasonably likely to exceed $20,000.00, noting that it has obtained the services of an AV-rated firm to represent Roybal in that case, and that "given the nature of the claims and defenses, there is the potential for additional expenses being incurred for expert witnesses." (Doc. 16 at 11); *see also St. Paul,* 303 U.S. at 289 ("the sum claimed by [the proponent of federal jurisdiction] controls if the claim is apparently made in good faith.").  Accordingly, the Court finds that the amount in controversy in this case is reasonably likely to exceed $75,000, and thus, that the case is properly in federal court.

## CONCLUSION

Therefore, for the reasons set forth above, the Court finds that Defendants' *Motion to Dismiss* (Doc. 11) is **DENIED.**

_____
United States District Court Judge